UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
)
DAVID JAROSLAWICZ, Derivatively on behalf )
of PerkinElmer, Inc., A Massachusetts Corporation, )
)
                   Plaintiff, )
)
v. )
)
GREGORY L. SUMME, ROBERT FRIEL, )      Civil Action No. 04-CV-11469-GAO
NICHOLAS LOPARDO, GABRIEL )
SCHMERGEL, KENTON SICCHITANO, and )
TAMARA ERICKSON, )
)
            Defendants, )
)
-and- )
)
PERKINELMER, INC., A Massachusetts )
Corporation, )
)
        Nominal Defendant. )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO

## DISMISS THE CONSOLIDATED DERIVATIVE COMPLAINT

Jeffrey B. Rudman (BBO # 433380)
Michael G. Bongiorno (BBO # 558748)
Daniel R. Margolis (BBO # 662117)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

August 30, 2005          *Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND AND FACTUAL ALLEGATIONS .................................................1

    A.    Background ...........................................................................................1

    B.    General Allegations Of Misconduct ....................................................3

    C.    Allegations Purporting to Excuse Pre-Suit Demand ...........................4

ARGUMENT .................................................................................................................6

    A.    The Standard For Demand Futility .......................................................6

    B.    The Complaint Fails to Plead Demand Futility Adequately Under Rule 23.1 ........8

        1.    Plaintiff Does Not Even Come Close To Alleging Particularized Facts Establishing That a Majority of the Board Acted so Egregiously That They Are Disabled From Considering Demand .........................................8

            a.    Plaintiff Fails to Make Specific Allegations Against Each Director Defendant ..........................................................9

            b.    Plaintiff's Allegations Against the Director Defendants are Conclusory and Based on Speculation ..........................................11

            c.    Plaintiff Cannot Presume the Board Would Never Vote to Sue Themselves .................................................................13

        2.    The Parallel Class Action Lawsuit Adds Nothing to the Demand Analysis ..............................................................................14

        3.    Allegation Of Stock Sale By A Single Director Defendant While in Possession of Allegedly Material Adverse Information Is Inadequate To Excuse Demand ..............................................................15

        4.    Conclusory Allegations That Defendant Summe's Position at PerkinElmer Prevents Other Board Members From Exercising Independent Judgment Are Inadequate To Excuse Demand ....................17

        5.    Conclusory Allegations About Insurance Coverage Are Inadequate To Excuse Demand ..............................................................19

        6.    The Exculpation Clause In PerkinElmer's Articles of Organization Bars Plaintiff's Claims .............................................................20

C.    Plaintiff's Claim For Damages Is Premature And Speculative, And Is Therefore Barred As A Matter of Law ...................................................................23

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Caviness v. Evans*,
   No. Civ.A.04-12524-JLT, 2005 WL 1995389, at *3 (D.Mass. Aug. 18, 2005)..............9, 10, 17

*Daisy Sys. Corp. v. Finegold*,
   No. C86-20719 (SW), 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988).................14, 23, 24

*Gaubert v. Fed. Home Loan Bank Bd.*,
   863 F.2d 59, 68 (D.C. Cir. 1988) .............................................................................................11

*Guerra v. Teradyne Inc.*,
   No. Civa. 01-11789-NG, 2004 WL 1467065, at *1 (D.Mass. 2004) ........................................16

*Heit v. Baird*,
   567 F.2d 1157, 1161-62 (1st Cir. 1977) ..................................................................................18

*In re Parametric Tech. Corp. Sec. Litig.*,
   300 F. Supp. 2d 206, 207 (D. Mass. 2001) .............................................................................16

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970, 990 (9th Cir. 1999) ...........................................................................................11

*In re Stratus Computer Inc., Sec. Litig.*,
   Civ. A89-2075, 1992 WL 73555, at *7 (D. Mass. Mar. 27, 1992).......................................8, 10

*In re Symbol Techs. Sec. Litig.*,
   762 F. Supp. 510, 516-17 (E.D.N.Y. 1991) ........................................................................23, 24

*In re United Telecomms., Inc. Sec. Litig.*,
   No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. March 4, 1993) ...............................23, 24

*ING Principal Protection Funds Litig.*,
   369 F. Supp. 2d 163, 171 (D. Mass. 2005) ...............................................................................4

*Kamen v. Kemper Fin. Serv.*,
   500 U.S. 90, 95-96 (1991) ...............................................................................................4, 5, 6

*Landy v. D'Alessandro*,
   316 F. Supp.2d 49, 58 (D. Mass. 2004) ..........................................................................5, 8, 18

*Langner v. Brown*,
   913 F. Supp. 260, 266 (S.D.N.Y. 1996) ..................................................................................18

*Lewis v. Graves*,
   701 F.2d 245, 249 (2nd Cir. 1983) ..........................................................................................12

*McCall v. Scott*,
  239 F.3d 808, 825 (6th Cir. 2001) ............................................................15, 16, 17

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194, 1224 (1st Cir. 1996).........................................................................15

*Stepak v. Addison*,
  20 F.3d 398, 411 (11th Cir. 1994) ..........................................................................20

*Stoner v. Walsh*,
  772 F. Supp. 790, 805 (S.D.N.Y. 1991) ............................................................19, 20

State Cases

*Allied Freightways v. Cholfin*,
  325 Mass. 630, 634, 91 N.E.2d 765, 768 (Mass. 1950) ..........................................20

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ..............................................................................passim

*Brehm v. Eisner*,
  746 A.2d 244, 254 (Del. 2000) ................................................................5, 6, 8, 14

*Caruana v. Saligman*,
  Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) ....................19

*Decker v. Clausen*,
  Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) .......19

*Demoulas v. Demoulas Super Markets, Inc.*,
  424 Mass. 501, 528-29, 677 N.E.2d 159, 179 (1997).............................................21

*Gagliardi v. TriFoods Int'l, Inc.*,
  683 A.2d 1049, 1055 (Del. Ch. 1996) ....................................................................13

*Grimes v. Donald*,
  673 A.2d 1207, 1216 (Del. 1996) ......................................................................8, 13

*Grobow v. Perot*,
  539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244
  (Del. 2000).............................................................................................................19

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) .......................................................................passim

*Haber v. Bell*,
  465 A.2d 353, 359 (Del. Ch. 1983) ........................................................................11

*Harhen v. Brown*, Civ. A. No. 97-1522-H, 1997 Mass. Super. LEXIS 145, at *3, *6 (Mass. Sup. Ct. Aug. 18, 1997), *aff'd*, 431 Mass. 838 (2000) ..........................................................6, 7, 8, 11

*Harhen v. Brown*,
    431 Mass. 838 (Mass. 2000) ...................................................................................passim

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129, 149 (Del. Ch. 2003) ....................................................................................7

*In re Baxter Int'l, Inc. S'holders Litig.*,
    654 A.2d 1268, 1271 (Del. Ch. 1995) .................................................................7, 8, 21, 22

*In re Caremark Int'l Deriv. Litig.*,
    698 A.2d 959 (Del Ch. 1996) ...............................................................................12, 20, 22

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720, 734 (Del. Ch. 1999) ...................................................................................23

*In re Paxson Communication Corp. Shareholders Litig.*,
    Civ. A. No. 17568, 2001 WL 812028, at *9 (Del. Ch. July 10, 2001) .....................................18

*In re Sonus Networks, Inc. Deriv. Litig.*,
    No. 040753, 2004 WL 2341395, at *4 (Mass. Super. Ct. Sept. 27, 2004).....................7, 12, 15

*Kaufman v. Belmont*,
    479 A.2d 282, 286 (Del. Ch. 1984) ...............................................................................7, 11

*Kohls v. Duthie*,
    791 A.2d 772, 779 (Del. Ch. 2000) ...................................................................................14

*Levine v. Smith*,
    591 A.2d 194, 207, 210 (Del. 1991) .....................................................................................5

*Malpiede v. Townson*,
    780 A.2d 1075, 1093 (Del. 2001) .................................................................................20, 23

*McMillan v. Intercargo Corp.*,
    768 A.2d 492, 503, 507 (Del. Ch. 2000) .........................................................................10, 23

*Murphy v. Hanlon*,
    322 Mass. 683, 686, 79 N.E.2d 292, 293 (Mass. 1948) ..........................................................22

*Orman v. Cullman*,
    794 A.2d 5, 24-25 (Del. Ch. 2002) ....................................................................................19

*Pogostin v. Rice*,
    480 A.2d 619, 625 (Del Supr. 1984) ..............................................................................11, 13

*Rales v. Blasband*,
    634 A.2d 927, 933 (Del. 1993) ........................................................7, 13

*Schaer v. Brandeis Univ.*,
    432 Mass. 474, 477 (Mass. 2000) ......................................................21

*Seminaris v. Landa*,
    662 A.2d 1350, 1354 (Del. Ch. 1995) ...........................................11, 14

*S. Shore Gastrointerology v. Selden, et al*,
    No. 032630BLS, 2004 WL 1431059, at *2 (Mass. Super. Ct. May 7, 2004) ...........................6

*White v. Panic*,
    793 A.2d 356, 366 (Del. Ch. 2000) ....................................................19

*Wilson v. Tully*,
    243 A.D.2d 229, 233, 235 (N.Y. App. Div. 1998) ................................22

<u>State Statutes</u>

Mass. Gen. Laws ch. 156D § 7.42 ...........................................................4

Mass. Gen. Laws ch. 156B ...........................................................20, 22

<u>State Rules</u>

Mass. R. Civ. P. 23.1 ...........................................................................5

## INTRODUCTION

Plaintiff David Jaroslawicz ("Plaintiff") purports to be a shareholder of PerkinElmer, Inc. ("PerkinElmer" or the "Company") and has brought this derivative suit against several of PerkinElmer's officers and directors.  Before bringing this derivative action, Plaintiff was required to make demand on PerkinElmer's board of directors (the "Board") to bring the lawsuit, but he never did so.  The Complaint fails to allege particularized facts showing why Plaintiff's failure to make demand should be excused.

In fact, the Complaint offers nothing more than the most superficial attempts to suggest that a majority of the Board was anything other than disinterested and independent.  Plaintiff's efforts to excuse demand by naming a majority of the Board as defendants, then claiming that such members cannot objectively consider demand because of their potential liability, falls far short of meeting Plaintiff's burden.  Because Plaintiff has set forth no basis to satisfy the threshold requirements for bringing a derivative suit, this action should be dismissed.

Moreover, PerkinElmer's Articles of Organization release its directors from personal monetary liability for a breach of the duty of care.  Because all of Plaintiff's claims are essentially duty of care claims, this action should be dismissed even if demand were excused.

Finally, Plaintiff's claim that PerkinElmer has somehow been damaged is at best premature and, therefore, should be dismissed.

## BACKGROUND AND FACTUAL ALLEGATIONS

### A.    Background

PerkinElmer, a Massachusetts corporation headquartered in Wellesley, Massachusetts, manufactures products and provides services in three areas: Life and Analytical Sciences (including drug discovery, genetic disease screening, environmental and chemical analysis, and other business); Optoelectronics (including specialty lighting and sensor systems, medical

systems components, telecommunications equipment); and Fluid Sciences (including fluid containment technologies).  (Consolidated Derivative Complaint ("Compl.") ¶ 8.)  In 2002, the Company had $1.5 billion in sales from continuing operations.  The Company's shares are traded on the New York Stock Exchange under the symbol PKI.

On February 7, 2002, PerkinElmer confirmed earlier earnings guidance of $1.24 - $1.26 per share for 2002.  (*Id.* ¶ 41.)  On March 1, 2002, PerkinElmer announced that it did not expect to meet these estimates, revised its annual earnings guidance down to $1.05 - $1.10 per share, and gave quarterly guidance of $0.16 - $0.17 per share for the first quarter of 2002.  (*Id.* ¶ 43.)  The Company also announced plans to reorganize the Optoelectronics unit.  The market price of PerkinElmer's stock dropped from $23 to $15.75.  On April 11, 2002, the Company announced that its first quarter results had not met these expectations and that the Company would approximately break even for the quarter.  (*Id.* ¶ 46.)  PerkinElmer's stock dropped to $12.01.

The Company did not announce any misstatement of its financial results from this period; it simply experienced a decline in its stock price after announcing that it no longer expected to achieve the results that it had earlier said it had expected.

On January 13, 2003, a class action was filed on behalf of certain purchasers of PerkinElmer securities against the Company and two of its senior executives, Gregory L. Summe ("Summe") and Robert Friel ("Friel").  Defendants in that action have filed a motion for summary judgment for failure to prove loss causation that is currently pending before the Court.

In June 2004, more than two years after the events at PerkinElmer described above, Plaintiff – *without first making a demand on PerkinElmer's Board of Directors* – filed this derivative action against four of PerkinElmer's eight outside directors, Nicholas Lopardo ("Lopardo"), Gabriel Schmergel ("Schmergel"), Kenton Sicchitano ("Sicchitano"), and Tamara

Erickson ("Erickson") (collectively the "Outside Director Defendants"), as well as director/officer Summe (collectively the "Director Defendants"), and Friel (collectively the "Defendants"). (Compl. ¶ 9-14.) PerkinElmer's outside directors make up an eight out of nine member majority of the Board.[1] This derivative matter is a "copy cat" complaint to the class action; although it comes along long after the fact; the derivative allegations essentially parrot those made in the parallel securities class action.[2] The only wrinkle added here is that all of the members of PerkinElmer's audit committee are named as defendants and alleged to be culpable for the Company's failure to hit its earnings targets.

**B.    General Allegations Of Misconduct**

The Complaint alleges that, between July 15, 2001 and April 11, 2002, the Director Defendants had the "responsibility to ensure that there existed at PerkinElmer sufficient internal controls to maintain the accuracy of its reported financial results, including revenue recognition." (*Id.* ¶ 55.) The Complaint claims that, despite the Director Defendants' responsibilities, the Company issued false or misleading statements in, *inter alia*, four press releases (*id.* ¶¶ 22, 27, 34, 39), statements made in a conference call with analysts (*id.* ¶¶ 24, 25), a Form 10-Q (*id.* ¶ 29), and a Form 10-K signed by certain Defendants (*id.* ¶ 45). The Complaint further alleges that defendants Summe and Friel traded PerkinElmer shares at artificially inflated prices, knowing that revenues for the Company were inflated through improper accounting and that none of the other Director Defendants took action to prevent such trading. (*Id.* ¶¶ 61, 78(c).)

---

[1] The Company is also named as a nominal defendant.

[2] For example, the derivative complaint includes the same allegation regarding the cost of certain PerkinElmer products, even though, Defendants contend, that information is factually inaccurate. (Compl. ¶ 32.) Though the class action complaint attributes such information to a former employee, the derivative complaint omits any such attribution.

Yet, even assuming that Plaintiff's generalized allegations regarding misrepresentation are true, the Complaint fails to present any particular allegations demonstrating that any of the Defendants, especially the Outside Director Defendants, knew of, or even had sufficient information from which one could uncover, such falsity.

## C.  Allegations Purporting to Excuse Pre-Suit Demand

A plaintiff may file a derivative suit *only if* he demonstrates that the corporation itself refused, or would have refused, "to proceed after suitable demand" on the corporation's board of directors.  *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 95-96 (1991); *see also Harhen v. Brown*, 431 Mass. 838, 844 (Mass. 2000).[3]  As the Complaint concedes, Plaintiff failed to make any demand, written or oral, that the Company's Board take any particular action with respect to Plaintiff's allegations.  (*See* Compl. ¶ 77.)  Instead, the Complaint merely asserts that any demand upon the members of the Board would have been "futile" for several "reasons," none of which even comes close to satisfying the requirements for establishing demand futility under Massachusetts law:

> (i)  the five Director Defendants are purportedly "not disinterested" from considering any demand because of their own potential liability, although the Complaint lacks any support for the allegation that the four Outside Director Defendants participated in or were even contemporaneously aware of the purported misconduct, much less the particularized support that the pleading standards require in derivative matters (*id.* ¶ 78(a, c, f, g));

> (ii)  defendant Summe sold stock in PerkinElmer during the relevant time period at allegedly artificially inflated prices, though even assuming that was true, the Complaint contains no support for the allegation that Summe was aware of such alleged artificial inflation (*id.* ¶ 78(b));

---

[3] On July 1, 2004, two weeks after Plaintiff filed the Complaint, Massachusetts enacted Mass. Gen. Laws. ch. 156D, § 7.42, which provides that, "No shareholder may commence a derivative proceeding until . . . a written demand has been made upon the corporation to take suitable action."  M.G.L. ch. 156D, § 7.42.  Defendants do not alleged herein that Plaintiff violated this statute because it does not apply retroactively.  *See, e.g., ING Principal Protection Funds Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005) (stating that § 7.42 applies to derivative proceedings filed on or after July 1, 2004, but dismissing derivative counts for failure adequately to allege demand futility).

(iii)     the Outside Director Defendants would never vote to sue defendant Summe, the Company's most powerful officer and director," and others in the "top ranks of the Company," though Plaintiff offers no factual support for this conclusory allegation (*id.* ¶ 78(d, e, i)), which courts have consistently rejected, and;

(iv)     the Director Defendants are "disabled" from considering demand because, based on PerkinElmer's insurance policy which excludes claims brought by the Company, a lawsuit would result in the loss of their insurance coverage, though such a rule has no support in the law and would disable virtually every board in Corporate America from being able to consider whether a lawsuit of this type was in the best interest of the corporation (*id.* ¶ 78 (h)).

Under Massachusetts law, however, a plaintiff asserting futility of demand must allege *with particularity* "his reasons . . . for not making the effort" – in other words, why demand would have been "futile."  Mass. R. Civ. P. 23.1; *see also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading … What the pleader must set forth are particularized factual statements that are essential to the claim.") (citations omitted); *Levine v. Smith*, 591 A.2d 194, 207, 210 (Del. 1991), *overruled in part on other grounds by Brehm,* 746 A.2d at 254, (pleading requirements of Rule 23.1 are "an exception to the general notice pleading standard" and "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss"). [4]  Courts in this district have "vigorously enforced" this heightened pleading standard.  *See Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 58 (D. Mass. 2004).

As set forth below, Plaintiff cannot be excused from making demand by merely naming a majority of the directors as defendants.  He must demonstrate through specific factual allegations

---

[4] Because PerkinElmer is a Massachusetts corporation, the demand analysis follows the law of Massachusetts. *Kamen v. Kemper*, 500 U.S. at 108-09 (demand analysis conducted under substantive law of state of incorporation). Massachusetts courts, however, often look to Delaware decisions for guidance in derivative matters.  *Harhen v. Brown*, 431 Mass. at 845-48 (relying on Delaware cases to construe Massachusetts demand requirement). Accordingly, Defendants refer both to Delaware and Massachusetts law herein.

that a majority of the Board – *of which eight of nine members are outside directors* – acted in such an *egregious* manner that there is a *substantial likelihood* that they would be subject to personal liability, thereby disabling them from considering demand. Here, Plaintiff has alleged **no** facts that might cause the Outside Director Defendants to face personal liability. Plaintiff does not cite to one statement or action by any Outside Director Defendant demonstrating any impropriety that might remotely subject them to personal liability. In short, none of Plaintiff's allegations, whether taken individually or collectively, excuses Plaintiff's failure to make demand on PerkinElmer's Board.

## ARGUMENT

### A.    The Standard For Demand Futility

Derivative claims are extraordinary remedies that impinge on the cardinal precept of corporate law that "the directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000); *see also Kamen*, 500 U.S. at 101.[5] Therefore, the "demand requirement" for derivative suits "exists at the threshold, first to insure that the stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *S. Shore Gastroenterology v. Selden, et al.*, No. 032630BLS, 2004 WL 1431059, at *2 (Mass. Super. Ct. May 7, 2004) (Van Gestel, J.), *citing Aronson*, 473 A.2d at 811-12.[6] Whatever the underlying allegations, if a derivative plaintiff fails to carry the burden of

---

[5]  *See also Harhen v. Brown*, Civ. A. No. 97-1522-H, 1997 Mass. Super. LEXIS 145, at *3, *6 (Mass. Sup. Ct. Aug. 18, 1997), *aff'd*, 431 Mass. 838 (2000) ("The persons best suited to make judgments on the conduct of the business . . . are the members of the board of directors … [T]he Court must undertake any intrusion into corporate governance with care and rarity.").

[6]  *See also Harhen*, 1997 Mass. Super. LEXIS 145, at *6 ("Rule 23.1 includes a pre-suit demand requirement that . . . is strongly enforced in Massachusetts . . . [and] is not treated as some idle procedure, devoid of meaning, all form and no substance.").

demonstrating that demand should be excused, the complaint must be dismissed. *See Kaufman v. Belmont*, 479 A.2d 282, 286 (Del. Ch. 1984).

The seminal test developed in Delaware (and used in Massachusetts) to determine demand futility is whether Plaintiff has pled with particularity that reasonable doubt exists either that: (i) a majority of the board is disinterested and independent, or (ii) the challenged transaction was a valid exercise of business judgment. *See Aronson*, 473 A.2d at 814. Here, Plaintiff does not challenge any specific action of the Board and therefore can rely only on the first prong of *Aronson* to demonstrate demand futility. *See Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993). The test under such circumstances becomes a simple one: whether the directors themselves face "substantial likelihood of personal liability." *Guttman v. Huang*, 823 A.2d 492, 500-501 (Del. Ch. 2003); *see also In re Sonus Networks, Inc. Deriv. Litig.*, No. 040753, 2004 WL 2341395, at *4 (Mass. Super. Ct. Sept. 27, 2004) (holding that where plaintiff made only generalized allegations reflecting poor supervision over financial statements, plaintiff could not rely on second prong of *Aronson* test).

Moreover, when assessing a claim of futility, "[a] Court must begin with a presumption of propriety in the board's action in the absence of *clear* allegations to the contrary," *Harhen,* 1997 Mass. Super. LEXIS 145, at *8 (emphasis added), and must only find a substantial likelihood of personal liability where the board's actions are egregious. *See Aronson*, 473 A.2d at 812, 815 (in demand context, there is presumption that directors acted in good faith and on informed basis); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 149 (Del. Ch. 2003) (except in "egregious circumstances" mere threat of personal liability does not constitute disabling interest); *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1271 (Del. Ch. 1995) ("This is [not] a rare case where the circumstances are so egregious that there is a substantial likelihood of

liability.") (citation omitted).  A derivative suit may not proceed, therefore, unless the complaint *specifically* alleges facts rebutting *each individual* director's presumptive disinterest and independence as well as demonstrating that their conduct was so egregious that there is *substantial likelihood of personal liability*.  *See Aronson*, 473 A.2d at 815-16 (requiring plaintiff to demonstrate "substantial likelihood of director liability" as to each director).[7]

**B.    The Complaint Fails to Plead Demand Futility Adequately Under Rule 23.1**

Plaintiff fails to allege that a majority of the directors on PerkinElmer's Board, eight of nine of whom come from outside of the Company, lack the independence to consider Plaintiff's demand.  As in *Harhen*, the Complaint is "woefully lacking in allegational specificity on the key issues of . . . independence or bias to warrant . . . interference with corporate management . . . ." *Harhen*, 1997 Mass. Super. LEXIS 145, at \*10 (dismissing derivative complaint under Mass. R. Civ. P. 23.1).  Plaintiff's failure to make demand, therefore, should not be excused.

**1.    Plaintiff Does Not Even Come Close To Alleging Particularized Facts Establishing That a Majority of the Board Acted so Egregiously That They Are Disabled From Considering Demand**

The Board that would consider Plaintiff's demand is comprised of nine members.  Four of the Board members are mentioned nowhere in the Complaint and are thus presumed to be "disinterested."  *See, e.g., Harhen,* 431 Mass. at 844 ("If the plaintiff has failed to allege facts that meet this standard with respect to a particular board member for purposes of ruling on a

---

[7] *See also Landy*, 316 F. Supp. 2d 57-58 (noting that both *Aronson* and *Rales* require plaintiff to raise a reasonable doubt that either (1) the directors are disinterested or independent with respect to the challenged transaction or (2) the challenged transaction was the product of a valid exercise of the directors' business judgment); *Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (noting that, to excuse demand, shareholder must plead with particularity that "reasonable doubt" exists as to whether the board can make an independent decision); *In re Stratus Computer, Inc. Sec. Litig.*, Civ. A. 89-2075-7, 1992 WL 73555, at \*7 (D. Mass. Mar. 27, 1992) (dismissing derivative claim that sought to excuse demand by discussing "defendants in collective terminology, making no reference to any particular act of any individual defendant").  *See also In re Baxter Int'l,* 654 A.2d at 1269 (noting that "disabling interest" arises when "the potential for liability is not a mere threat but instead may rise to a substantial likelihood") (internal quotation marks and citation omitted); *Guttman*, 823 A.2d at 504 (finding that plaintiff's failure to plead "particularized basis to infer that [the conduct of the] outside directors" was wrongful is "fatal to [its] effort to show demand excusal").

motion to dismiss, that member is deemed 'disinterested.'"). Plaintiff must, therefore, allege that each of the Director Defendants (comprising a majority of the Board) acted so egregiously that they face a substantial likelihood of personal liability based on their actions, and thus are disabled from considering Plaintiff's demand. *See, e.g.*, *Caviness v. Evans,* No. Civ. A. 04-12524-JLT, 2005 WL 1995389, at *3 (D. Mass. Aug. 18, 2005) (dismissing complaint for failure to create a reasonable doubt concerning the disinterestedness of defendants). Plaintiff fails to meet this strict burden.

   a.    *Plaintiff Fails to Make Specific Allegations Against Each Director Defendant*

Contrary to the Supreme Court's directive under *Aronson*, Plaintiff fails to allege specific facts against *each* Director Defendant demonstrating that each faces a substantial likelihood of personal liability. *See Aronson*, 473 A.2d at 815-16. The core of the Complaint against the Outside Director Defendants is that they were responsible for ensuring that an adequate "system of internal controls was in place" and that "proper revenue recognition practices were being followed," and that they had duties of due care and full disclosure with respect to the dissemination of business, operational, and financial information of the Company. (Compl. ¶¶ 18, 78(f).) With empty boilerplate, the Complaint groups all Individual Defendants together with respect to their knowledge, motives, and actions:

> *The Individual Defendants* either directly participated in the decisions to release the false and misleading press releases and SEC filings complained of herein . . . (*id.* ¶ 71) (emphasis added);

> [*The Individual Defendants*] were aware of their materially misleading nature . . . . (*id.*) (emphasis added);

> *Defendants* caused Perkin to engage in a course of conduct . . . (*id.* ¶ 72) (emphasis added);

> *Defendants* undertook this scheme to . . . profit personally. . . . (*id.*) (emphasis added);

> *Defendants*, by acting as alleged herein, in bad faith, exposed
> Perkin to massive liability . . .  (*id.* ¶ 74) (emphasis added).

Other than identifying certain individual Defendants as members of the Audit Committee, the Complaint contains no factual allegation as to what each Director Defendant knew, saw, or did that would have made him or her realize the alleged falsity of a statement, the alleged inadequacy of an internal control, or the alleged impropriety of a certain accounting treatment.[8] Nor is there anything other than the most generic description of how the majority of the Director Defendants reaped any "personal profit" from their supposed actions.  In short, there is nothing more than pure conjecture as to how the members of the Audit Committee were somehow involved in press releases about the Company's prospects and other such matters, much less any specifics that would cause anyone to conclude that there is a "substantial likelihood" that such individuals will be found to be liable for a breach of any duty.

Indeed, aside from their introduction in the "Parties" section of the Complaint (*id.* ¶¶ 11-14), not one of the Outside Director Defendants is mentioned individually anywhere in the Complaint for any action they took, statement they made, or piece of information they learned. This absence, in and of itself, is fatal to Plaintiff's claims.  *Harhen,* 431 Mass. at 844 ("If the plaintiff has failed to allege facts that meet this standard with respect to a particular board member for purposes of ruling on a motion to dismiss, that member is deemed 'disinterested.'"); *In re Stratus Computer Inc., Sec. Litig.*, 1992 WL 73555, at *7 (dismissing derivative claim that sought to excuse demand by discussing "defendants in collective terminology, making no reference to any particular act of any individual defendant").  The mere fact that the Outside

---

[8]  *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 503, 507 (Del. Ch. 2000) (in dismissing claims of disloyalty and bad faith, court noted absence of any "facts indicating why disinterested directors would "sell out" company's stockholders"); *Caviness*, 2005 WL 1995389, at *5 (to advance a claim of failure to exercise proper oversight, "Plaintiff must plead particularized facts showing that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation") (citation omitted).

Director Defendants sit on the PerkinElmer Board or Audit Committee is insufficient to render them interested.  *See, e.g., Harhen*, 431 Mass. at 846 ("mere membership on a board at the time of the alleged wrongdoing, without more, does not result in interested status").

> b.     *Plaintiff's Allegations Against the Director Defendants are Conclusory and Based on Speculation*

Rather than allege specific documents, conversations, or meetings involving the Outside Director Defendants, the Complaint alleges, in conclusory fashion, that they are all disabled from considering demand because they, *inter alia*, "participated in," "were aware of," or "were reckless in not knowing" of the Company's release of false or misleading press releases (Compl. ¶ 71); failed to prevent breaches of duty of loyalty by Summe (*id*. ¶ 78(c)); took no action to assure adequate internal controls (*id*. ¶ 78(f)); and, based on their alleged responsibility for the Company's financial reporting, were "all involved in the wrongs alleged" (*id*. ¶ 78(g)).  Nowhere in the thirty-five page, ninety-seven paragraph Complaint does Plaintiff allege one action taken by *any of the Outside Director Defendants in any purported wrongdoing*.[9]  Instead, the Complaint leaves unanswered how the Outside Director Defendants could have known anything about the purported misconduct at PerkinElmer or of any facts that would give rise to a duty to take action the Board allegedly did not take.

---

[9]  *See Harhen*, 1997 Mass. Super. LEXIS 145, at *7 & n. 5 ("Rule 23.1 also has within it requirements for precision that reach well beyond Rule 8's simple notice requirements for a short and plain statement of facts . . . . Even the Rule 8 mandate, otherwise, seems to have been almost totally forgotten by the drafters of the 45-page, 90-section Complaint at issue here.").  *See Pogostin v. Rice*, 480 A.2d 619, 625 (Del. Supr. 1984) ("[B]ootstrap allegations of futility, based on claims of directorial participation in and liability for the wrongs alleged . . . were laid to rest in *Aronson*."); *Aronson*, 473 A.2d at 809, 818 (holding that allegation that all directors named in suit "participated in, expressly approved and or acquiesced in, and are personally liable for the wrongs complained of herein" did not allow plaintiff to avoid demand); *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 990 (9th Cir. 1999) (applying Delaware law and finding that "general allegation that the Board participated in the fraudulent scheme . . . [is] insufficient to demonstrate that the Board engaged in conduct that resulted in a substantial risk of personal liability."); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 68 (D.C. Cir. 1988) (noting that conclusory allegations that directors participated in, approved of, or acquiesced in certain conduct are insufficient to demonstrate bias or lack of independence); *Kaufman*, 479 A.2d at 287 ("A mere allegation of acquiescence without more is insufficient to show breach of fiduciary duty or lack of independence or disinterestedness."); *Haber v. Bell*, 465 A.2d 353, 359 (Del. Ch. 1983) (finding claim that board "approved or acquiesced in" challenged action insufficient to excuse demand); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (signing misleading 10-K and registration statement insufficient).

Plaintiff makes allegations of improper actions against only one board member (Summe), and even those allegations lack the particularity necessary to establish a "substantial likelihood" of liability. *See supra* Sec. A. With regard to the Outside Director Defendants, Plaintiff only surmises what they "knew or should have known" and alleges that, after presumably acquiring such knowledge, the Directors "took no action . . . to assure [an adequate] system of internal controls was in place." (Compl. ¶ 78(f).) A claim such as this one for failure to exercise proper oversight is one of, if not the, most difficult theories upon which to prevail. *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). In order to hold directors liable under such a theory, a plaintiff must demonstrate that the directors were "grossly negligent" in carrying out their duties. *Id.* Plaintiff does not even attempt to make that showing.

With each conclusory allegation, Plaintiff stops short of alleging any particular facts in support of it. Plaintiff alleges that the Outside Director Defendants "failed to diligently monitor Summe's conduct," and failed to "ensure proper oversight systems were in place." (Compl. ¶ 78(f).) Yet, the Complaint fails to identify any documents or conversations that should have alerted the Defendants that the supposed conduct required special monitoring or that the Company's oversight systems were not adequate. *See Guttman*, 823 A.2d at 498 (finding reasons why "particular defendants should have been on notice," or "had actual or constructive notice" of alleged misconduct to be lacking, and allegations insufficient to excuse demand); *see also Lewis v. Graves*, 701 F.2d 245, 249 (2nd Cir. 1983) (dismissing derivative action and finding that "bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility."); *In re Sonus Networks, Inc. Derivative Litig.*, 2004 WL 2341395 at *5 (dismissing derivative complaint for failure to excuse demand where there was "absence of specific or particularized allegations regarding how [the directors] would have been put on notice of any

accounting problems"). Indeed, Plaintiff fails to allege any particularized facts regarding the Company's internal financial controls during the Relevant Period, including the actions and inactions of the Audit Committee.[10]

Similarly, Plaintiff alleges that the Director Defendants "permitted the Company to issue false and misleading press releases and SEC filings." (Compl. ¶ 78(g).) Yet, the Complaint lacks any facts regarding the Board's involvement in the preparation and dissemination of the financial statements and press releases described in the Complaint.

Plaintiff's transparent effort to name a majority of the Board as defendants with no factual allegations in support of his claims against them is insufficient to excuse demand. *See Grimes*, 673 A.2d at 1216 n.8 ("Demand is not excused simply because plaintiff has chosen to sue all directors . . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets.") (*citing Rales* 634 A.2d at 936); *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1055 (Del. Ch. 1996) ("[I]t is well established that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not" excuse demand.).

        c.    *Plaintiff Cannot Presume the Board Would Never Vote to Sue Themselves*

Similarly, Plaintiff's baseless claim that the Board would "never…vote to sue themselves," and is thus *per se* disabled from considering Plaintiff's demand, (Compl. ¶ 78(f, g)), should be soundly rejected given that there is no evidence that the Board would not faithfully discharge its duty if presented with Plaintiff's allegations. *See, e.g.*, *Pogostin*, 480 A.2d at 625 ("allegations of futility . . . coupled with a reluctance by directors to sue themselves" are

---

[10]   Courts have noted that relevant facts include "whether the company had an audit committee during that period, how often and how long it met, who advised the committee, and whether the committee discussed and approved any of the allegedly improper accounting practices." *Guttman*, 823 A.2d at 498.

insufficient to excuse demand), *overruled on other grounds by Brehm*, 746 A.2d 244; *Kohls v. Duthie*, 791 A.2d 772, 779 (Del. Ch. 2000) ("[M]ere fact that directors would be asked to sue themselves is not a basis for excusing demand.").[11]

### 2.    The Parallel Class Action Lawsuit Adds Nothing to the Demand Analysis

The existence of a virtually identical federal securities class action lawsuit, alleging essentially the same facts as those alleged here, does nothing to make the likelihood of personal liability for a majority of the Board any more substantial.  This is necessarily true because ***none*** of the Outside Director Defendants, constituting an eight-member majority of PerkinElmer's nine-person board, is named as a defendant in this other action.  In any event, this allegation is nothing but a variation on the universally rejected theory that directors cannot independently evaluate whether to sue themselves.  Indeed, if the courts excused demand for a derivative lawsuit based on the mere existence of a pending federal securities fraud lawsuit, a shareholder plaintiff could always circumvent the demand requirement simply by filing two lawsuits, no matter how baseless.[12]

Of the claims of breach of fiduciary duty, gross negligence, breach of contract, breach of duty of loyalty, and unjust enrichment underlying the derivative suit itself, only the first two name the Outside Director Defendants and none raises the specter of a "substantial likelihood of director liability."  *See Aronson*, 473 A.2d at 815.  Plaintiff's breach of fiduciary claim is premised on the allegation that each Outside Director Defendant participated in the issuance of

---

[11] For example, in *Seminaris*, 662 A.2d at 1354-55, the plaintiff alleged that the board failed to prevent the C.E.O. from misrepresenting the company's financial condition and conspired with the C.E.O. to misrepresent the value of the corporation's stock, and that certain board members signed misleading securities filings.  The court, in granting a motion to dismiss, noted that Plaintiff was "merely uttering a slightly altered version of the discarded refrain – 'you can't expect directors to sue themselves.'" *Id*. at 1354-55.

[12] In addition, a derivative claim of this nature is necessarily contingent on the outcome of the separate, pending lawsuit (which is at its initial stages), and the mere possibility of damages from such lawsuit is not sufficient to disable a director from independently considering demand.  *See Daisy Sys. Corp. v. Finegold, Inc.*, No. C 86-20719 (SW), 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988) (holding that "the mere filing of [other] lawsuits cannot provide a factual predicate for alleging damages.").

"false and misleading statements to PerkinElmer shareholders and the investing public."
(Compl. ¶ 80.)  There is, however, no particular allegation that the Outside Director Defendants
had any role in disseminating such information or that they had any knowledge as to its alleged
falsity.  Plaintiff's gross negligence claim is premised on the allegation that the Outside Director
Defendants were grossly negligent in their failure to assure "adequate internal financial
controls."  (*Id.* ¶ 83.)  The Complaint, however, lacks any allegation, as opposed to supposition,
as to what information was made available to the Outside Director Defendants, what actions they
took in response, and why such actions were grossly negligent under the circumstances.  There is
thus no substantial likelihood that the Outside Director Defendants face personal liability based
on the allegations in the Complaint.

> ### 3.   Allegation of Stock Sale By a Single Director Defendant While in Possession of Allegedly Material Adverse Information Is Inadequate To Excuse Demand

Plaintiff alleges that **_one_** of the Director Defendants (Summe) engaged in insider trading.
As an initial matter, this argument, at most, addresses only why Summe would be disabled and
does not address why the remaining eight outside directors would not be able to consider
Plaintiff's demand.

In any event, Summe's stock sale does not render him disabled from considering demand.
Under Delaware law, "the mere fact that stocks were traded by . . . [a] director does not establish
a breach of the duty of loyalty." *In re Sonus Networks, Inc. Derivative Litigation*, 2004 WL
2341395, at *4 (*quoting McCall v. Scott*, 239 F.3d 808, 825 (6th Cir. 2001), *decision amended
on other grounds,* 250 F.3d 997 (6th Cir. 2001)); s*ee also Shaw v. Digital Equip. Corp.,* 82 F.3d
1194, 1224 (1st Cir. 1996) ("[M]ere fact that insider stock sales occurred does not suffice to
establish scienter.").  "A director is free to trade in the corporation's stock without liability to the
corporation.  In fact, when directors and officers own stock or receive compensation in stock,

they should be expected to trade those securities in the normal course of events." *McCall*, 239

F.3d at 825 (citations omitted).  Even allegations of specific instances of insider trading, without

more, are insufficient to excuse demand.  Rather, a plaintiff must also allege particular facts

supporting an inference that each trade was entered into and completed on the basis of, and

because of, adverse material non-public information and was carried out with *wrongful intent*.

*See McCall,* 239 F.3d at 825-26 (holding that demand not excused on basis of insider trading

because, even though trades specifically identified, "fraudulent intent" could not be inferred from

trades).

Despite Plaintiff's unsubstantiated allegation that Summe engaged in insider trading,

Plaintiff fails to plead any facts to show that Summe's sale of less than 14% of his stock – nearly

three months before the March 1 announcement that PerkinElmer was reorganizing its

Optoelectronics Unit and at a price far below the highest price the stock reached in the weeks

after the trade – was in any way "unusual in timing and amount" or was made "in order to profit

from [PerkinElmer's] inflated stock price."[13]  Indeed, the Complaint does not even allege with

any specificity the purported "inside information" that Summe supposedly possessed at the time

of this trade.  *In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 207 (D. Mass. 2001)

(plaintiff must plead facts to warrant finding that trading was suspiciously abnormal and

inference of bad intent from that finding); *Guttman*, 823 A.2d at 503-04 (allegations that

---

[13]  If this transaction involved insider trading, it was very poorly timed, as PerkinElmer's stock increased by
approximately 10% only one month after Summe's sale.  *See* Bloomberg's Historical Stock Chart for PerkinElmer
Inc. (PKI) for the dates December 31, 2001 through January 31, 2002.  (Exh. A to Affidavit of Daniel R. Margolis
dated August 29, 2005 ("Margolis Aff.") submitted herewith).  This court regularly takes judicial notice of stock
prices from reliable sources in considering a motion to dismiss. *See, e.g., Guerra v. Teradyne Inc.,*  No. Civa. 01-
11789-NG, 2004 WL 1467065, at *1 (D. Mass. 2004) ("this court may appropriately take judicial notice of . . . stock
prices which have been submitted by the defendants as [an] [e]xhibit . . . in Support of Defendants' Motion to
Dismiss").  In addition, Summe sold his stock in the month prior to the Company's January 24, 2002 press release
confirming the Company's strong earnings growth, which Plaintiff alleges contained false and misleading
statements.  (Compl. ¶ 42.)  Plaintiff fails to explain why, if Summe was trading on inside information and knew
the Company would be issuing false or misleading earnings guidance one month later, Summe would trade his stock
in December 2001, rather than January 2002.  Clearly, there was nothing "unusual" about Summe's trades in
December 2001.

defendants sold up to 100% of shares, without more, are insufficient); *McCall*, 239 F.3d at 825 ("[t]he substantial holdings that [defendants] continued to maintain negate any inference that they were trading on materially adverse non-public information").[14]  Because of the lack of particular allegations with respect to Summe's trading on PerkinElmer stock, such trading does not disable Summe from considering demand.

### 4. Conclusory Allegations That Defendant Summe's Position at PerkinElmer Prevents Other Board Members From Exercising Independent Judgment Are Inadequate To Excuse Demand

Plaintiff broadly asserts that Defendant Summe, by virtue of his position as President, Chief Executive Officer and Chairman of the Board of PerkinElmer, is so powerful that it is "inconceivable" that the Director Defendants would vote to sue him and risk losing their position on the Board and $70,000 in compensation.  (Compl. ¶ 78 (d, e).)  Plaintiff does not even allege that Summe actually exerts any control or domination over the Board; instead, Plaintiff asserts without support that the Board's decisions would be affected by Summe's position alone.  These allegations fall far short of justifying failure to make demand of the Board.

As with other allegations concerning demand futility, "a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'"  *Aronson*, 473 A.2d at 816; *see also Caviness,* 2005 WL 1995389, at *5 (holding that even assuming director who was principal founder, Chairman, and CEO of company is interested, bald-faced assertions that he controlled board do not particularize how directors were beholden to him or so under his influence that their discretion would be

---

[14] The Complaint also asserts with similar conclusory allegations that Friel, a non-director defendant, engaged in insider trading.  However, because Friel is not on the Board, this allegation is irrelevant to whether demand is excused.  *See, e.g., Guttman*, 823 A.2d at 503 n.22 ("that three non-director-defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason: they are not on the board*").

sterilized); *Heit v. Baird*, 567 F.2d 1157, 1161-62 (1st Cir. 1977) (requiring particularity with

respect to allegations that alleged wrongdoers "dominated" majority of board); *In re Paxson*

*Communication Corp. Shareholders Litig.*, Civ. A. No. 17568, 2001 WL 812028, at *9 (Del. Ch.

July 10, 2001) ("Even where the *potential* for domination or control by a controlling shareholder

exists, the complaint must allege particularized allegations that would support an inference of

domination or control").

    Plaintiff's allegation that no Board member would take a position adverse to Summe's

and risk losing their position on the Board and $70,000 in compensation has been recently

addressed – and rejected.[15]  In *Landy,* plaintiff alleged that "the board lack[ed] independence

from [the Company's] CEO who apparently control[led] the board on compensation," pleading

only one particular fact in support of this mere conclusion – a statement by one executive that his

compensation was "entirely at the discretion of [the CEO]."  316 F. Supp. 2d. at 63-64.  The

court in *Landry* recognized "the severely heightened pleading standard" under which he assessed

plaintiff's allegations, and found even the particular allegation insufficient to establish

reasonable doubt as to the independence of the Board.  *Id.*

    Here, Plaintiff ***does not make one*** particular allegation of Summe's power over the Board

or his role in deciding the Board's membership or compensation.  Even if Plaintiff had made

some such allegation, he makes no particular allegations regarding the basis for compensation or

whether the compensation is in any way material to each Director's livelihood such that they

would not vote in the best interests of the Company to avoid the risk of losing such income.  *See*

*Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (rejecting claim of demand futility for

multiple directorships where "there is no pleading that a majority of the directors are beholden to

---

[15]  Were a director's desire to maintain his compensation sufficient to excuse demand, the demand rule would be
rendered useless given that most corporate directors receive remuneration for their services.

[the controlling shareholder] for their livelihoods or a material portion of their incomes."); *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (holding that directors were not beholden to person who secured their directorships and annual retainers); *Cf. Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (in context of directors' interest, directors' payment for services alone are not enough to excuse demand); *Stoner v. Walsh*, 772 F. Supp. 790, 805 (S.D.N.Y. 1991) ("A director is not interested with respect to all board decisions merely because he or she is paid to be a director").[16]

### 5. Conclusory Allegations About Insurance Coverage Are Inadequate To Excuse Demand

Finally, Plaintiff attempts to excuse demand by alleging that Defendants might lose their insurance coverage if they brought suit because claims against Directors brought by the Company are excluded from coverage. (Compl. ¶ 78(h).) The law recognizes – and rejects – such an argument as nothing more than a variation "on the 'directors suing themselves' and 'participating in the wrongs' refrain." *Caruana v. Saligman*, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (holding that demand not excused when "liability insurance has a typical exclusion from coverage of claims brought by [the Company] against its directors") (*quoting Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (holding that demand not excused when "[plaintiff's allegation] that . . . liability insurance would not cover an action brought by the company against its own directors ... provid[ed] no particularized facts") (unpublished decision)). If this Court were to accept Plaintiff's argument, it would, in effect, be adopting a *per se* rule that directors facing the potential loss of personal assets are "interested" for the purposes of excusing demand. *See*

---

[16] *See also Orman v. Cullman*, 794 A.2d 5, 24-25 (Del. Ch. 2002) (materiality of financial interest measured in the context of director's economic circumstances).

*Stepak v. Addison*, 20 F.3d 398, 411 (11th Cir. 1994) (rejecting *per se* rule that directors cannot

exercise proper business judgment when personal assets threatened); *Stoner,* 772 F. Supp. at 805

(holding that insured versus insured exclusion did not automatically render a director interested;

"[p]laintiff's assertion … finds no support in either case authority or logic").  Such a *per se* rule

would conflict with the law that the mere threat of directors' personal liability does not excuse

demand.  *See Aronson*, 473 A.2d at 815.

> **6.**    The Exculpation Clause In PerkinElmer's Articles of Organization Bars
> Plaintiff's Claims

The Court should dismiss the Complaint because, under PerkinElmer's corporate charter,

the Director Defendants are all exempted from liability for breaches of duty of care and thus face

*no* risk of personal liability, much less a substantial likelihood of such risk.

In the absence of any ***factual*** allegation allowing a reasonable inference of bad faith or

knowing violation of law, the Complaint, at best, alleges a breach of the duty of care.[17]  Under

Massachusetts law, corporations are permitted to eliminate liability for claims of breach of the

duty of care.  *See* Mass. Gen. Laws ch. 156B, § 13(b)(1 1/2); *see also Malpiede v. Townson*, 780

A.2d 1075, 1093 (Del. 2001) ("[W]here the factual basis for a claim *solely* implicates a violation

of the duty of care, [the courts have] indicated that the protections of [an exculpatory provision

in a corporate charter] may properly be invoked and applied.") (citation omitted).  PerkinElmer

has adopted just such a charter provision reading, in pertinent part, as follows:

> To the fullest extent permitted by Chapter 156B of the
> Massachusetts General Laws, as it exists or may be amended, a
> Director of this Corporation shall not be personally liable to the

---

[17]  To support a claim for breach of a director's duty of care, a plaintiff must show "clear and gross negligence" towards the corporation.  *See Allied Freightways v. Cholfin*, 325 Mass. 630, 634, 91 N.E.2d 765, 768 (Mass. 1950) (directors of a company "are not to be held responsible for mere errors of judgment or want of prudence short of clear and gross negligence"); *see also In re Caremark*, 698 A.2d at 967, 969 (classifying allegation that directors "violated a duty to be active monitors of corporate performance" as violation of duty of care rather than duty of loyalty).

> Corporation or its stockholders for monetary damages for breach
> of fiduciary duty as a Director, notwithstanding any provision of
> law imposing such liability.

*See* Restated Articles of Organization of PerkinElmer, Inc., Article VI (Ex. B to Margolis Aff.).[18]

Massachusetts law permits corporations organized under the laws of the Commonwealth to

eliminate "personal liability of a director to the corporation or its shareholders for monetary

damages for breach of fiduciary duty as a director notwithstanding any provision of law

imposing such liability," except with respect to liability for (i) breach of duty of loyalty; (ii) acts

or omissions not in good faith or which involve intentional misconduct or a knowing violation of

law; (iii) acts involving unauthorized distributions or insider loans; and (iv) any transactions

from which the director derived an unreasonable personal benefit.  Mass. Gen. Laws ch. 156B, §

13(b)(1 1/2).  Accordingly, personal liability for the Outside Director Defendants is far-fetched

at best, as PerkinElmer's charter and Massachusetts law offer the Directors complete protection

from the claims asserted in the Complaint.

Indeed, Plaintiff is doubtlessly aware of this problem, as he has attempted to plead a duty

of loyalty case where the allegations, at most, qualify as duty of care claims.  Unlike the

allegations in this case, a violation of the duty of loyalty involves a director's pursuit of his own

self-interest to the detriment of the corporation.  *See Demoulas v. Demoulas Super Markets, Inc.*,

424 Mass. 501, 528-29, 677 N.E.2d 159, 179 (1997) (stating that "directors and officers are

bound by their duty of loyalty to subordinate their self-interests to the well-being of the

corporation").  In contrast, a director's duty of care relates to the director's obligation to act in

---

[18]  Courts may take judicial notice of a company's articles of organization in deciding a motion to dismiss.  *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (Mass. 2000) (court can consider "matters of public record" in evaluating motion to dismiss); *In re Baxter Int'l*, 654 A.2d at 1270 (noting propriety of taking judicial notice of certificate of incorporation in deciding motion to dismiss).

"complete good faith" and exercise reasonable intelligence in conducting the affairs of the corporation.  *See Murphy v. Hanlon*, 322 Mass. 683, 686, 79 N.E.2d 292, 293 (Mass. 1948).

Here, Plaintiff premises his breach of fiduciary duty and gross negligence claims against the Outside Director Defendants on their participation in, awareness of, or reckless disregard of, the dissemination of false statements (Compl. ¶ 71), and their "failure . . . to assure the existence within PerkinElmer of appropriate and adequate internal financial controls."  (*Id.* ¶ 78(f).)  Such allegations implicate the directors' duty of care and not their duty of loyalty.  *See In re CareMark*, 698 A.2d at 967 (classifying allegations that "directors allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance" as duty of care violations).

Courts have rejected such attempts to twist duty of care claims into duty of loyalty claims.  *See Wilson v. Tully*, 243 A.D.2d 229, 233, 235 (N.Y. App. Div. 1998) (demand not excused where plaintiff claimed futility because directors allegedly permitted illegal course of conduct; exculpation clause in charter removed any substantial likelihood of director liability for such claim).  The Delaware Chancery Court, faced with a similar situation, said:

> *When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption.*  Plaintiffs claim that the directors failed to prevent employee conduct that caused the corporation to be suspended from receiving new government contracts.  However, the complaint does not claim bad faith, intentional misconduct, knowing violation of law, or any other conduct for which the directors may be liable.

*In re Baxter Int'l*, 654 A.2d at 1270 (emphasis supplied).

Because PerkinElmer's corporate charter explicitly exculpates its directors from any liability for breach of the duty of care, this Complaint – sounding only in breach of a duty of care

– must be dismissed. *See, e.g., Malpiede*, 780 A.2d at 1094 (upholding dismissal of derivative action on basis of exculpatory charter provision).[19]

## C.  Plaintiff's Claim For Damages Is Premature and Speculative, and Is Therefore Barred as a Matter of Law

Plaintiff bases his claims for monetary damages on the threat of PerkinElmer's possible liability for damages in the pending federal securities fraud class action litigations.  (*See* Compl. at 34) (seeking judgment "awarding PerkinElmer the damages sustained by it").  In essence, Plaintiff purports to seek damages on behalf of PerkinElmer to compensate it for harm it has not yet – and may never – suffer.  Because the Company has not suffered any damages, Plaintiff's claim is premature and should be dismissed.

Claims are not ripe when the relief sought is still "contingent upon the outcome of a separate, pending lawsuit."  *In re United Telecomms., Inc. Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. March 4, 1993) (dismissing derivative complaint because of speculative nature of damages sought, and noting complaint acknowledged such by requesting damages "*to the extent that* [the company] is held liable for the damages alleged by the purchasers of its securities," and asserting that directors had exposed the company to "*potential* damages") (emphasis in original); *Daisy Sys. Corp. v. Finegold,* No. C86-20719 (SW), 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988) (dismissing complaint and noting that allegations of damages based on filing of other lawsuit are insufficient).  Damages claims based on the outcome of another pending action are premature because "no judgment has been rendered, nor a settlement reached."  *In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 516-17 (E.D.N.Y. 1991)

---

[19]  *See also McMillan*, 768 A.2d at 501-02 (dismissing claim because of exculpatory charter provision, effect of which "is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable damages claim for a breach of the duty of care"); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999) (dismissing claim on grounds of exculpatory provision where "[c]omplaint alleges, if anything, only a breach of the duty of care").

(dismissing cause of action as premature). Stated another way, "no injury has been sustained for which plaintiff may sue to recover." *Id.* at 516.

Here, as the Complaint itself makes clear, Plaintiff's allegations present a classic example of such prematurity. For example, the Complaint alleges that PerkinElmer "has been damaged *by its exposure* to multi-million dollar damages claims" – even though no such damages have been sustained. (*See* Compl. ¶ 75) (emphasis added).[20] Because Plaintiff seeks to pursue claims for which damages are not recoverable, these claims must be dismissed.

---

[20] Plaintiff's colorful description of alleged damages to the Company's reputation in the securities markets and its ability to secure future business partners (Compl. ¶ 76), make damages to PerkinElmer no more real or immediate. *See In re United Telecomms.*, 1993 WL 100202, at *2 (allegations that company suffered "damage to its credibility" rejected as conclusory and insufficient to withstand dismissal); *In re Symbol Techs.*, 762 F. Supp. at 517 (allegations that directors "jeopardized the continued public acceptance and marketability" of company's stock and "undermined [the Company's] credibility in the securities market" rejected as conclusory and insufficient to withstand dismissal); *Daisy Sys.* 1988 WL 166235, at *4 (allegations of "lost investor confidence" are insufficient).

## CONCLUSION

For all of the reasons set forth above, Defendants request that the Court dismiss the

Consolidated Derivative Complaint, in its entirety, with prejudice, and grant such further relief it

deems fair and just.

Respectfully submitted,

GREGORY L. SUMME, ROBERT FRIEL,
NICHOLAS LOPARDO, GABRIEL
SCHMERGEL, KENTON SICCHITANO,
TAMARA ERICKSON, AND PERKINELMER,
INC.

By their attorneys,


/s/ Daniel P. Margolis
Jeffrey B. Rudman (BBO # 433380)
Michael G. Bongiorno (BBO # 558748)
Daniel R. Margolis (BBO # 662117)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000


Dated:  August 30, 2005

### Certificate of Service

I, Daniel R. Margolis, hereby certify that a true copy of this Memorandum in Support of Defendants' Motion to Dismiss the Consolidated Complaint was served this 30th day of August, 2005 upon the following counsel electronically or via overnight mail:

Michael F. Germano, Esq.
Law Offices of Michael F. Germano
63 Atlantic Avenue
Boston, Massachusetts 02109

Robert C. Schubert
Juden Justice Reed
Willem F. Jonckheer
Schubert & Reed LLP
Two Embarcadero Center, Suite 1660
San Francisco, California 94111

Peter A. Lagorio, Esq.
Law Office of Peter A. Lagorio
63 Atlantic Avenue
Boston, Massachusetts 02109

Richard Bemporad
Lowey Dannenberg Bemporad & Selinger, P.C.
One North Lexington Avenue, 11th Floor
White Plains, New York 10601

Robert I. Harwood, Esq.
Wechsler Harwood LLP
488 Madison Avenue
Suite 801
New York, NY 10022

/s/ Daniel Margolis_____

US1DOCS 5245506v6